UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREGORY R. PLUMP,<br>     **Plaintiff,**<br><br> v.<br><br>CAROLYN W. COLVIN[1], ACTING<br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION<br><br>     **Defendant.** | Civil Action No. 2:12-CV-257 |

OPINION AND ORDER

This matter is before the court on the Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act [DE 29] filed on August 30, 2013. For the following reasons, the motion is **GRANTED.**

*Background*

The plaintiff, Gregory R. Plump, applied for Social Security Income Benefits and Supplemental Security Income on August 1, 2008, alleging a disability onset date of July 1, 2005. The applications initially were denied on November 5, 2008, and upon reconsideration on April 21, 2009. Plump filed a request for a hearing and appeared before Administrative Law Judge Karon Sayon on January 4, 2011. The ALJ issued her decision denying benefits on January 13, 2011. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

1

Plump filed his complaint with this court on July 3, 2012, and on June 3, 2013, this court remanded the case for further proceedings.

In the Opinion and Order, the court explained that Plump's treating opthamologist diagnosed him with glaucoma in his left eye and noted blurry vision. Plump reported glaucoma and blurry vision in his left eye to the state agency consultative physician, Dr. Osei, but Dr. Osei did not conclude that Plump had glaucoma. The ALJ adopted Dr. Osei's opinion, without providing any further explanation of the reason she did not consider Plump's glaucoma or blurry vision. The court explained that the ALJ might have considered these complaints implicitly by adopting Dr. Osei's opinion, but that the regulations required the ALJ to address medical evidence that conflicted with her decision and to provide an explanation of her basis for rejecting a treating physician's opinion over that of a state consultative physician. Although the Commissioner argued that the ALJ's failure to provide an explanation was harmless error because Plump's treating physician never noted that Plump had greater restrictions than the ALJ determined, the court explained that the regulations imposed a duty on the ALJ to explain her reasoning regardless, and absent such an explanation the court could not be certain that the ALJ considered the evidence or that she would have reached the same RFC if she had.

The court next explained that the ALJ determined that Plump's depression and substance abuse problems caused minimal limitations in Plump's ability to perform mental work activities, but she did not provide any explanation of the resulting limitations or explain why this non-severe impairment did not require any limitations on Plump's mental functioning. The court remanded the case in part for the ALJ to provide further reasoning of what effect, if any, Plump's mild limitations in mental functioning had on his RFC. Similarly, the ALJ did not include a mild limitation in mental

functioning in the hypothetical questions that she posed to the vocational expert. Because the court could not be certain that the Vocational Expert would have identified the same jobs if he considered this limitation, the court directed the ALJ to address this issue on remand.

The ALJ noted that the record did not contain enough doctor's notes pertaining to Plump's diagnoses of cervical radiculitis, cervical sprain, cervical degenerative joint disease, and cervical radicuopathy. The regulations state that the ALJ may not draw inferences from a failure to pursue regular medical treatment without considering the claimant's explanation. **SSR 96-7p**. However, the ALJ did not elicit testimony from Plump to explain the absence of further treatment and did not consider Plump's financial condition.

The court agreed with the ALJ's credibility assessment, consideration of Plump's activities of daily living and their affect on Plump's RFC, and the weight the ALJ assigned to the testimony of Plump's witness. Plump's attorney now seeks attorney's fees for his successful appeal.

*Discussion*

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." **28 U.S.C. § 2412(d)(1)(A)***; see also **Commissioner, I.N.S. v. Jean**,* 496 U.S. 154, 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990*); **Golembiewski v. Barnhart***, 382 F.3d 721, 723-34 (7th Cir. 2004). A fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the application is "eligible to receive an award;" (3) a showing of "the amount sought, including an

3

itemized statement from any attorney or expert witness representing or appearing in[sic] behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed;" and (4) an "alleg[ation] that the position of the United States was not substantially justified." **28 U.S.C. § 2412(d)(1)(B);** *see also* ***Scarborough v. Principi***, 541 U.S. 401, 405, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004); ***United States v. Hallmark Constr. Co***., 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B))).

Considering whether the Commissioner was substantially justified, the court is to analyze the "position of the United States," which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct. **28 U.S.C. § 2412(d)(2)(D)**; *Golembiewski*, 382 F.3d at 724; ***Marcus v. Shalala***, 17 F.3d 1033, 1036 (7th Cir. 1994). The trial court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Golembiewski*, 382 F.3d at 724 (citing ***Hallmark Constr.***, 200 F.3d at 1080). A court should evaluate the factual and legal support for the Commissioner's position throughout the entire proceeding. *See* ***Hallmark Constr.***, 200 F.3d at 1080. A court need only make one determination regarding the Commissioner's conduct during the entire civil action. ***Jean***, 496 U.S. at 159, 110 S.Ct. at 2319; ***Jackson v. Chater***, 94 F.3d 274, 278 (7th Cir. 1996). "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigation position may have been substantially justified and vice versa." ***Marcus***, 17 F.3d at 1036. The court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue. *See* ***Hallmark Constr.***, 200 F.3d at

4

1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see also* *Golembiewski*, 382 F.3d at 724. Expanding on this definition, the United States Court of Appeals for the Seventh Circuit explained, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550); *Church v. Astrue*, 496 F.Supp.2d 964, 966 (N.D. Ind. 2007) ("[I]f an agency had 'a rational ground for thinking it had a rational ground for its action,'" the Commissioner's position is substantially justified.'" (citing *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994)). When conducting this analysis, the court should consider whether the ALJ's decision was plausibly supported by evidence of record and whether the Commissioner's position is supported by applicable law. *Church*, 496 F.Supp.2d at 966 (citing *Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006); *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994)). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 568-69, 108 S.Ct. at 2552. Thus, a loss on the merits does not automatically constitute a lack of substantial justification. *See Pierce*, 487 U.S. at 569, 108 S.Ct. at 2252. The Commissioner bears the burden of proof in showing that the government's litigation position was substantially justified. *See Pierce*, 487 U.S. at 565, 108 S.Ct. at 2561; *Golembiewski*, 382 F.3d at 724.

The court remanded the ALJ's decision for several reasons. First, the court explained that

the ALJ failed to provide any explanation for rejecting the conflicting opinions of Plump's treating opthamologist and the state consultative physician's opinion. Although the Commissioner argued that this failure was harmless error because nothing in the record supported a more restrictive limitation than that which the ALJ imposed, the court rejected this argument, explaining that the ALJ had a duty to explain the reasons she rejected medical evidence that contradicted her conclusion and the record was devoid of any consideration of the documented impairments. The Commissioner now argues that reasonable people could disagree on whether the ALJ's failure to explain the reasons she rejected the conflicting opinions of Plump's treating opthamologist was substantially supported, again arguing that there was a colorable argument that the ALJ's failure to address Plump's treating opthamologist's opinion was harmless error because none of the physicians of record demanded greater restrictions than those the ALJ found. However, this does not accurately reflect the ALJ's duty. The ALJ was required to address material inconsistencies and to explain contradictions between the treating physician's opinion and the other evidence of record. *See* **SSR 96-8p;** ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000).

Here, Plump's treating opthamologist found that Plump had glaucoma and that it caused blurry vision. The state agency consultative physician did not find that Plump had glaucoma or, consequently, blurry vision in his left eye. Therefore, the opinions were in direct contrast to each other. Although Plump's treating opthamologist did not state that Plump had further limitations than those imposed, it is difficult to fathom a situation where blurry vision in his one "good" eye would not affect his vision in some capacity. Because the ALJ's had a clearly established duty to, at minimum, address why she rejected the contrary opinion of Plump's treating physician, the court finds that the Commissioner's position was not substantially justified. *See **Schmidt v. Astrue***, 496

F.3d 833, 842 (7th Cir. 2007)("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *Clifford*, 227 F.3d at 870 (explaining that the ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability.") *(quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *See also* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). It is immaterial that Plump's treating opthamologist did not state that Plump was further limited. Rather, the record must reflect that the ALJ considered all the evidence– specifically evidence that could result in greater restrictions and that which was diagnosed by a treating physician.

Additionally, the court remanded because the ALJ identified depression as a non-severe impairment but did not identify any resulting limitations or explain why Plump's depression did not affect his RFC. The ALJ also failed to incorporate Plump's mild limitations in mental functioning into the hypotheticals she posed to the VE and did not inquire into the reasons Plump failed to obtain further treatment. The Commissioner argues that non-severe impairments by definition do not affect the RFC. However, the regulations explicitly require that the ALJ consider the non-severe impairments in combination with the severe impairments. **20 C.F.R. § 404.1523.** *See also,* **Parker v. Astrue***, 597 F.3d 920, 923 (7th Cir. 2010);* **Winfield v. Commissioner of Social Security***, 2013 WL 692408, *3 (N.D. Ind. 2013). Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ was required to explain why. *See* **SSR 96-8p** ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record

7

were considered and resolved."). Similarly, even if the ALJ determined that depression was a non-severe impairment, it should have been included in the hypotheticals posed to the VE, because when this non-severe impairment was considered in combination with the severe impairments, the VE's response may have differed. These were clearly established duties that the ALJ failed to comply with.

The ALJ also relied in part on the absence of treatment records in reaching her decision. However, she reached this conclusion without asking Plump why he failed to obtain more medical care. Again, this was a clearly established duty that the ALJ failed to comply with. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (explaining that the ALJ must elicit reason for failing to pursue medical treatment).

The ALJ failed to fulfill multiple duties that were outlined clearly by the regulations and well-established. For this reason, the court does not find that the Commissioner's decision was justified.

The Commissioner also disputes whether Plump's attorney's fee request is reasonable. The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." **28 U.S.C. § 2412(d)(2)(A)(ii)**. The Commissioner argues that Plump has not met his burden of showing that the enhanced rate he requested is justified. In *Matthews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011), the Seventh Circuit explained that an attorney is not entitled to an inflation adjustment, but he must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government. *Mathews-Sheets*, 653 F.3d at 563. An attorney must "show that without a cost of living increase . . . a lawyer capable of competently

handling the challenge that his client mounted to the denial of social security benefits could not be found in the relevant geographical area to handle such a case." *Matthews-Sheets v. Astrue*, 653 F.3d at 565.

Plump's attorney submitted the local consumer price index as support for his argument that inflation has increased the cost of legal services. He argues that the CPI reflects that the cost of rent, salaries, research fees, and other overhead expenses have increased. He also submitted his affidavit and the affidavit of another local Social Security attorney, both of whom stated that they do not take cases for an EAJA of less than $170. In light of these submissions, the court finds that Plump's attorney has met his burden to show that the cost of legal services has increased. However, the Commissioner points out that Plump's counsel used the "U.S. City Average" of the CPI to derive upon the rate he proposed. The court agrees that the local consumer price index is the most accurate source of the cost of living in the market where the litigation occurred, and that the Midwest Urban Consumer Price Index should be used to calculate the rate of attorney's fees, reducing the hourly rate to $181.59.

The parties also dispute the rate at which the law clerk should be permitted to bill. The Commissioner argues that most of the work performed by the law clerk was clerical and that Plump has not shown that an increased rate is merited for the work the law clerk performed. Plump conceded that some of the tasks the law clerk performed were administrative and stated that he amended Exhibit B to reflect as much. However, he did not file the Amended Exhibit B. Upon review of the time log submitted, the court agrees that many of the tasks the law clerk performed were administrative, including such tasks as emailing, faxing, creating a file, and scanning. For this reason, the court finds that Plump's attorney did not meet his burden to show that a higher rate was

9

warranted and will reduce the law clerk's rate to $100 per hour.  This amounts to a total fee award of $6,112.29.

Based on the foregoing reasons, Plump is awarded $6,112.29 in attorney's fees.

ENTERED This 10th day of February, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge